

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HASSELL B. MARLIN, ] | |
| ] | |
| Plaintiff(s), ] | |
| ] | |
| vs. ] CV-02-CO-2711-S | |
| ] | |
| BIRMINGHAM BOARD OF EDUCATION and ] | |
| EVELYN BAUGH, ] | |
| ] | |
| Defendant(s). ] | |

MEMORANDUM OF OPINION

I.  INTRODUCTION.

This is an action brought pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983. The plaintiff, Hassell Marlin (hereinafter, "Marlin"), claims defendants discriminated against him because of his race and retaliated against him after he engaged in protected activity. The cause is presently before the Court on motions for summary judgment filed by defendants, Evelyn Baugh (hereinafter, "Baugh"), Doc. 52, and the Birmingham Board of Education (hereinafter, "the Board" or "the Board of Education"). Doc. 49. Additionally, the plaintiff and the defendants filed

motions to strike. Doc. 71, 83. Discovery is complete, the issues have been briefed, and the motions are ripe for decision.

II. THE MOTIONS TO STRIKE.

A Rule 12(f) motion is addressed only to the pleadings and should not be used to object to an affidavit filed in support of a motion. *Smith v. Southeastern Stages, Inc.*, 479 F. Supp. 593, 594 -5 (N.D. Ga. 1977), citing Wright and Miller, Federal Practice & Procedures 1380. "It is sufficient for the party opposing the motion to register its objection to the movant's affidavits by way of the material submitted in opposition to the motion. The court will then implicitly, if not explicitly, rule upon these objections in its consideration of the motion." *Id.*[1]

Accordingly, the motions to strike are due to be denied. In deciding the motions for summary judgment, the court has paid particular consideration to the Board's motion to strike Todd's affidavit, claiming attorney-client privilege. Doc. 83. The Board did not sustain its burden of

---

[1]While striking of entire pleadings has been authorized by the former Fifth Circuit as a means of sanction, the remedy is "draconian" and should be limited to the most extreme of circumstances. *See* Augustus v. Bd. of Public Instruction of Escambia Cty., 306 F.2d 862, 868 (5th Cir. 1962); *E.E.O.C. v. Troy State Univ.*, 693 F.2d 1353, 1357 -58 (5th Cir.1982).

showing that the statement before the Court was based on knowledge obtained through a privileged, confidential communication. *See Bogle v. McClure*, 332 F.3d 1347, 1358 (11th Cir. 2003)(party invoking attorney-client privilege has burden of proving the attorney-client relationship and that communication was "(1) intended to remain confidential and (2) under the circumstances was reasonably expected and understood to be confidential"). The Board's showing that Todd generally spoke with the Board attorneys about an employee's status does not show that his information about the Board's renewal of Marlin's contract was privileged and confidential.

The Board also argued that Todd's affidavit, and the affidavit of Wendell Jones should be stricken because Plaintiff's counsel obtained them in violation of Rule 4.2 of the Alabama Rules of Professional Conduct. This Court need not decide if the Rules of Professional Conduct have been violated, since the remedy for such violation is not exclusion of evidence, but disciplinary measures. *Terry Cove North, Inc. v. Marr & Friedlander, P.C.*, 521 So. 2d 22, 23 -24 (Ala. 1988).

The remainder of the motions to strike addressed evidence which was

immaterial to the resolution of the pending motions. Accordingly, the motions to strike will be denied.

III.   SUMMARY JUDGMENT STANDARD.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

## IV. DISCUSSION.

Marlin taught social studies and coached football at Ensley High School during the 2000-01 school year. He also worked at Ensley during the 2001-02 school year. Evelyn Baugh was the principal of Ensley High School. Marlin brought this action under Title VII and 42 U.S.C. § 1983 against the Board of Education and under § 1983 against Baugh, claiming he was subjected to disparate treatment and retaliation during his employment at Ensley High School. In his EEOC charge, he claimed he had been denied his regular teaching and coaching assignments, he had been denied a coaching supplement, and he had been denied an assigned classroom. He further claimed he had received a counseling letter from Baugh, placing responsibility on him for a fight in his physical education class. Finally, he claimed Baugh had cut him from her teaching roster. He claimed the actions were taken due to his race, and in retaliation for his support of the former white head football coach.

A.   The Title VII Claims Against the Board.

1.   Disparate Treatment.

Under the burden-shifting *McDonnell-Douglas* framework,[2] a plaintiff claiming his employer intentionally treated him less favorably due to his race must first establish a prima facie case of discrimination by showing: (1) he belongs to a protected class (2) and was subjected to an adverse job action (3) while similarly situated employees outside the protected class were treated more favorably and (4) he was qualified for his job. *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997). The Board argues Marlin cannot show he suffered an adverse employment action and cannot identify a similarly situated person who was treated more favorably. The Board also contends Marlin cannot show the Board's legitimate, nondiscriminatory reasons for taking the contested actions were pretextual.

---

[2] The plaintiff has not pointed to any direct evidence of discrimination, and relies on circumstantial evidence presented under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as modified in *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). *See Chapman v. A1 Transporation*, 229 F.3d 1012, 1024 (11th Cir. 2000)(en banc). The plaintiff need not, as the Board suggests, make an additional showing of causality to establish a prima facie case.

Marlin presented evidence of at least three adverse employment actions which meet the standard of *Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1230-40 (11th Cir. 2001). Marlin presented evidence from which a jury could find that he had a coaching contract but was not allowed to coach and did not get a coaching supplement for the 2001-02 school year; that he was hired as a social studies teacher and was required to teach other subjects and work as a teacher's aide in 2001-02; and that he was terminated at the end of the 2001-02 school year. All these activities constitute *significant* changes in employment status, such as hiring, firing, failing to promote, reassignment with *significantly* different responsibilities, or a decision causing a *significant* change in benefits. *Davis*, 245 F.3d at 1238-39.[3] The Court agrees that some of the activities mentioned by Marlin

---

[3]The Board has not established there is an absence of material fact regarding its argument that Marlin "turned-down" teaching and coaching positions at Ensley and at Jackson-Olin, then voluntarily retired. Doc. 68, p. 9. The Board's argument that it is entitled to summary judgment because it has no policies regarding classroom assignments, teaching schedules, or teaching assignments, and leaves those responsibilities to the principal does not entitle it to summary judgment as to the Title VII claims. Although a § 1983 plaintiff cannot proceed on a theory of *respondeat superior* liability, a plaintiff may rely on agency principles in prosecuting a Title VII case. *Monell v. Dept. of Social Svcs.*, 436 U.S. 658 (1978); *Raney v. Vinson Guard Svc.*, 120 F.3d 1192, 1197 (11th Cir. 1997), citing *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993). The Board's contention that Marlin suffered no decrease in pay, prestige or responsibility in 2001-02 is a disputed fact upon which it cannot rely for

may not be sufficient in themselves to establish an adverse employment action. Nevertheless, as discussed above, Marlin has presented some evidence from which a jury could conclude he suffered an adverse employment action.

The Board's argument that Wendell Jones and Marcus Harris are not proper comparators does not entitle it to summary judgment because the differences noted by the Board are not conclusively established. The factual questions prevent summary judgment for the Board on this issue.

The Board's claim that its ability to fire non-tenured teachers is a legitimate, non-discriminatory reason for non-renewing Marlin also misses the mark. When non-discriminatory reasons for the challenged employment action are proffered, the plaintiff must prove by a preponderance of the evidence that the proffered reasons are pretextual. *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993). However, every at-will employee can be terminated under the law "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall*

---

summary judgment purposes.

*Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984). The Board's showing that Marlin was an at-will employee does not satisfy its burden of coming forward with evidence of a non-discriminatory reason for its decision not to renew his contract.

  2. Retaliation.

In his EEOC complaint, Marlin claimed he was retaliated against for supporting the white football coach, Riley. In his brief in response to the motion for summary judgment, he argues he was retaliated against for filing his EEOC complaint in August 2001. To establish a prima facie case of retaliation, a plaintiff must demonstrate (1) he engaged in statutorily protected expression, (2) there was a subsequent adverse employment action, and (3) some causal relation exists between the protected expression and the adverse action. *Meeks v. Computer Assoc.*, 15 F.3d 1013, 1021 (11th Cir. 1994). The Board argues that Marlin cannot show he suffered an adverse employment action and cannot show a causal connection. Doc. 68, pp. 20-26.

To be considered an adverse employment action for purposes of Title VII's anti-retaliation provision, the action must either be an ultimate

employment decision or "meet some threshold level of substantiality." *Stavropoulos v. Firestone*, 361 F.3d 610, 616-17 (11th Cir. 2004). As discussed above, there is evidence from which a jury could find that Baugh attempted to cancel Marlin's coaching and teaching contracts shortly after Riley left Ensley and that Marlin was not given social studies classes to teach nor was he permitted to coach in the 2001-02 school year. There is also evidence that after Marlin filed his EEOC complaint in August 2001, he was required to teach several different schedules and work as a teacher's aide, was not paid a coaching supplement, and was ultimately terminated. *See Bass v. Bd. of County Comm'rs*. 256 F.3d 1095 (11th Cir. 2001)(actions which deprived employee of compensation he otherwise would have earned was adverse employment action, and other actions such as not giving him same duties as other instructors, no routine work assignments, custodial and clerical duties were adverse when considered collectively).

The Board's argument that it did not know of Baugh's retaliatory conduct does not rule out the causal link in a Title VII case. Under Title VII, general agency principles govern the circumstances in which a principal will be held liable for the acts of its agents. *Raney v. Vinson Guard Svc.*, 120

F.3d 1192, 1197 (11th Cir. 1997), *citing Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993). Therefore, to show a "causal link" Marlin need only show Baugh was aware of the protected expression and acted within the scope of his or her agency when taking the action. *Id*. As discussed below, there is evidence from which a jury could conclude Baugh was the decisionmaker with respect to Marlin's teaching and coaching assignments. Further, there are disputes of fact regarding the Board's knowledge of the problems at Ensley when it voted to non-renew Marlin's contract in 2002.

      3.    The Section 1983 Claims.

          a.    The Board.

As set forth above, the Board is not entitled to summary judgment as to Marlin's Title VII claims. The Board argues it is, nevertheless, entitled to summary judgment on the § 1983 claims because the alleged discrimination was not the result of a Board policy or procedure. Although a plaintiff may rely on agency principles in prosecuting a Title VII employment discrimination suit, it is well established that there is no *respondeat superior* liability under § 1983. *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658

(1978).[4]

While municipalities may not be held liable under section 1983 on a theory of *respondeat superior*, they are liable for government policies or customs. *Monell*, 436 U.S. 658; *Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1325 (11th Cir. 2003). When a plaintiff cannot show his constitutional injury was proximately caused by an officially promulgated policy or a widespread custom operating as de facto policy, he may establish liability by showing his injury was caused by a single decision or act by a municipal official with final policymaking authority over the subject matter. *Pembaur v. Cincinnati*, 475 U.S. 469 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988). Marlin argues Baugh is the "final policy-maker" for the adverse employment decisions which affected him, so that the Board may be held

---

[4]The Board has not presented evidence or legal precedent to support its claim that it is not subject to suit under Art. 1, § 14 of the Alabama Constitution or the Eleventh Amendment. *But see, Kendrick v. Jefferson County Bd. of Educ.*, 932 F.2d 910, 914 (11th Cir. 1991)(stating that county boards of education in Alabama are not entitled to eleventh amendment immunity); *Goss v. San Jacinto Jr. College*, 588 F.2d 96, 99 (5th Cir. 1979)(observing that Supreme Court stated in *Mt. Healthy* that a "local school board such as petitioner is more like a county or city than it is like an arm of the State"). As to the claim that it is not a "person" subject to suit under § 1983, the Board merely asserts that "[s]ome courts have interpreted "person" under § 1983 to not include school boards." Again, no citation of authority has been offered. The Court will not give further consideration to these contentions without evidence and/or law in support.

liable under section 1983.

Under Alabama law, the Board was the final decision-maker with respect to the non-renewal of Marlin's teaching contract at the end of the 2002 school year. Although Baugh made recommendations to the Board, and there is evidence the Board generally followed principals' recommendations, Alabama Code § 16-24-12 provides that teachers are deemed re-employed for succeeding school years unless the majority of the Board votes otherwise. *See Shelton v. Lauderdale Co. Bd. of Ed.*, 380 So. 2d 835 (Ala. 1980)(letter from superintendent advising teacher of non-renewal insufficient under § 16-24-12 where letter was not authorized by proper school board procedure). Because the Board had to vote to terminate Marlin, Baugh cannot be the final decisionmaker or policymaker. Furthermore, the Board's adoption of Baugh's recommendation does not impose liability on the municipality, since there is no evidence that, in approving Baugh's decision, the Board also approved its allegedly unconstitutional basis. *Praprotnik*, 485 U.S. at 130.

Marlin argues the Board could not have meaningfully reviewed Baugh's recommendation of non-renewal because the recommendation was plainly

inconsistent with his exemplary evaluations that year. However, the inconsistency is not blatant or indicative of the Board's blind approval, as Marlin contends. The Court can conceive of many circumstances in which a principal would choose to non-renew an exemplary teacher. "[T]he mere failure to investigate the basis of a subordinate's discretionary decision does not amount to a delegation of policymaking authority, especially where . . . the wrongfulness of the subordinate's decision arises from a retaliatory motive or other unstated rationale." *Praprotnik*, 485 U.S. at 129-30.

Based on the evidence presently before the Court, it appears that Baugh had ultimate and final decisionmaking authority with respect to the class assignments for teachers and coaches at Ensley and with respect to the coaching supplement. However, not all final decisionmakers are policymakers which subject a municipality to liability. The key distinction is whether the decisionmaker has the authority to establish policy for the municipality or merely exercises discretion to implement existing policy. *Pembaur*, 475 U.S. at 483, n. 12. If the decision is subject to review, the decisionmaker's authority is only discretionary. *Scala v. City of Winter Park*, 116 F.3d 1396 (11th Cir. 1997). There is no evidence that Baugh's

decisions with regard to Ensley's teaching and coaching assignments or Ensley's coaching supplements are subject to review. Further, the Board has denied that it has any policies or procedures that Baugh was required to follow in making her decisions regarding assignments and supplements. Doc. 68, p. 8. Because Baugh's decisions in these areas are not subject to review and are not circumscribed by any Board policy, she is the final policymaker for the Board.

Accordingly, the Board's motion for summary judgment will be granted as to the § 1983 claims based on Marlin's termination, but will be denied as to the § 1983 claims based on Marlin's teaching and coaching assignments at Ensley and his coaching supplement.

      b.    Baugh.

As discussed above, although Baugh recommended Marlin's termination to the Board, she was not a final decisionmaker with respect to the non-renewal. Accordingly, she is entitled to summary judgment as to the § 1983 claims based on Marlin's termination.

However, there is sufficient evidence from which a jury could find Baugh was a decisionmaker with respect to Marlin's teaching and coaching

assignments at Ensley and the payment of his coaching supplement. Accordingly, Baugh's motion for summary judgment will be denied as to the § 1983 claims based on these decisions.

V.     Conclusion.

Upon due consideration, and for the reasons set out above, the Board's motion for summary judgment will be granted as to the § 1983 claims based on Marlin's termination. The § 1983 claims based on Marlin's teaching and coaching assignments and coaching supplement for the 2001-02 school year will be denied. The Board's motion will be denied as to the Title VII claims. Baugh's motion for summary judgment will be granted as to the § 1983 claims based on Marlin's termination, and denied as to the § 1983 claims based on Marlin's teaching and coaching assignments and coaching supplement for the 2001-02 school year. A separate order will be entered. The motions to strike will be denied.

Done this 24th day of June 2004.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE